UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

United Transportation Union and
Rick L. Chapman

      Plaintiffs,

v.                                   Civil Action No. 5:07-CV-0682

Gary L. Perdue, B.R. Martin,
Lawrence Washington, City of Montgomery,
Kanawha County Sheriff's Department and
County Commission of Kanawha County

      Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, GARY L. PERDUE'S MOTION TO DISMISS

NOW COMES the Defendant, Gary L. Perdue, by counsel, John R. Fowler and Anna B. Williams, appearing specially, and in support of his Motion to Dismiss states as follows:

### STATEMENT OF FACTS

The Plaintiffs' complaint alleged that on or about June 11, 2007, the Plaintiff was operating a CSX freight train. Plaintiffs Complaint at ¶ 11 attached hereto as Exhibit A. The train which the Plaintiff was operating collided with and killed a pedestrian. Id. As a result of the aforementioned accident, Defendant, Officer Gary L. Perdue, in his capacity as a City of Montgomery Police officer, arrived at the scene of the accident. Id. at ¶ 12. The Plaintiffs' complaint alleged that the Plaintiff, Rick L. Chapman's, constitutional rights were violated by an unlawful search and seizure of Rick L. Chapman. Id. at Count I. Mr. Chapman and the United Transportation Union

(hereinafter "UTU") raise claims pursuant to Article VI, the Fourth Amendment and the Fourteenth Amendment of the United States Constitution.  Specifically, Mr. Chapman has alleged that Officer Perdue "compelled" Mr. Chapman "undergo a breath test using a hand held device."

DISCUSSION

I.      STANDARD OF REVIEW AND APPLICABLE LAW

Rule 12(b)(6) motions to dismiss allow the trial court to test the formal sufficiency of the complaint.  See Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, complaints which fail to allege sufficient facts against a party "fail[] to state a claim upon which relief may be granted" and must therefore be dismissed.  Conclusory allegations without factual foundation will not survive a motion to dismiss under Rule 12(b)(6).

I.      THE PLAINTIFFS LACK STANDING TO BRING AN ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF IN THIS MATTER.

The United Transportation Union (hereinafter "Union") has not even attempted to establish standing to sue Gary L. Perdue.  It merely identifies itself as a labor union and echoes the claims of Mr. Chapman.  There are no individual facts plead that relate to the Union.  The Union has alleged no injury to itself or its members.  However, besides the fact that it fails to plead any facts, including any injury to itself or its members, which would provide it with standing to be a part of this matter, it lacks standing all together.

As an initial matter, standing is, "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975).  In

determining whether a Plaintiff has made out a "case in controversy," the Court must ask, "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Id. at 498-99 (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, (1962)).  Further, the United States Supreme Court stated in Warth, "the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." Id. at 500.

While it is clear that an association may have standing to bring an action on behalf of one or more of its members absent injury to itself, that privilege is not absolute. Necessary factors given in Warth, *supra* that must be present to give an association standing to bring an action on behalf of its members were better articulated in Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 97 S.Ct. 2434 (1977). Factors which must be present in order for an association to have standing to bring an action on behalf of its members are: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id.

Though it is difficult to glean from the Plaintiffs' complaint, it appears that the United Transportation Union has brought a declaratory judgment action and is attempting to use this tragic fatality to establish a national precedent stripping police officers of jurisdiction over railroad workers using the Federal Railroad Safety Act.  Though we vehemently contend that Congress did not intend for the Federal Railroad Safety Act to

divest state and municipal law enforcement officers of their authority over railroad employees, we do not even reach such a discussion with respect to Gary Perdue. The Union has no standing to sue Gary Perdue to obtain this declaration.

First, the members of the United Transportation Union would arguably have standing to sue Officer Perdue in their own right, assuming they had a valid claim against him. However, the members of the United Transportation Union would have no standing whatsoever to sue Officer Perdue for the wrongs allegedly committed upon the Plaintiff, Mr. Chapman. Further, redressing the alleged constitutional violations of Mr. Chapman are not germane to the purpose of the Union.

Finally, the relief requested by the Union *requires* the participation of the member whose constitutional rights were allegedly violated. Only Mr. Chapman may seek relief under 42 U.S.C. § 1983. Id. at *2. The United Transportation Union has suffered no injury and it may not seek remedial relief for injuries suffered by Mr. Chapman. See Brotherhood of Locomotive Engineers v. Jones, Civ. A. No. 92-2868, 1992 WL 370126 (E.D.La. 1992) (citing Warth, *supra*). The Louisiana District Court stated in Jones, *supra* that "[b]ecause the [union] has not suffered an injury, it may not seek remedial relief for injuries suffered by its membership because those injuries would require individualized proof. Id.

Fourth Amendment rights are *personal* rights and can only be asserted by the person whose rights have allegedly been infringed. See State v. Schofield, 175 W.Va. 99, 331 S.E.2d 829 (1985). See also U.S. v. Haqq 278 F.3d 44 (2d Cir. 2002)(stating, "[i]t has been clear for a generation that 'Fourth Amendment rights are personal rights ... [that] may not be vicariously asserted.'" quoting Rakas v. Illinois, 439 U.S. 128, 133-34,

4

99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). A labor union cannot bring an action for relief for alleged violations of Mr. Chapman's constitutional rights. Mr. Chapman's Fourth Amendment rights are Mr. Chapman's and Mr. Chapman's alone. No one can assert violations of Mr. Chapman's rights other than Mr. Chapman. Besides the Union having no standing to assert a violation of Mr. Chapman's constitutional rights, neither the Union nor Mr. Chapman has standing to seek declaratory or injunctive relief in this matter.

In the unpublished opinion, <u>Brotherhood of Locomotive Engineers v. Jones</u>, Civ. A. No. 92-2868, 1992 WL 370126 (E.D.La. December 1, 1992)[1] an AMTRAK train hit a vehicle at a railroad crossing. Attached hereto as Exhibit B. The Louisiana State Police, as well as Deputy Jeff Jones and Deputy Clyde Burise, responded to the accident. <u>Id.</u> at *1. After being given a copy of AMTRAK's General Road Foreman's Notice by the engineer who was driving the train at the time of the incident, which stated that local law enforcement officers could only perform alcohol testing on the railroad employee if they had probable cause to believe that he was impaired, the state police chose not to test the Plaintiff, Richard Williams. <u>Id.</u> However, the deputies chose to test Williams, and he, and the Brotherhood of Locomotive Engineers sued the deputies seeking:

> (1) declaratory judgment that the defendants may administer alcohol and drug testing only as directed by the federal railroad regulation and that the toxicological testing performed on Williams was done without probable cause in violation of his Fourth Amendment Rights; (2) an injunction prohibiting the defendants from conducting alcohol and drug testing of railroad employees except as provided by federal regulation; and (3) compensatory and punitive damages under 42 § U.S.C. 1983.

---

[1] Though this Defendant does not have a copy of the Complaint filed in <u>Brotherhood of Locomotive Engineers v. Jones</u>, 1992 WL 370126 (E.D.La. 1992), it appears that the relief sought by the Plaintiffs in that action is very similar to the relief sought in the instant action.

Id.  The Louisiana District Judge concluded that the United States Supreme Court case of City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660 (1983) controlled this matter. In Lyons a plaintiff sought injunctive relief against the City of Los Angeles after he was placed in a choke hold by police officers during a traffic stop.  Id. at 97-98.  The United States Supreme Court held that "Lyons lacked standing to pursue equitable relief because he had failed to establish a real and immediate threat that he would again be stopped by police and that the police would again apply the chokehold without cause." Jones, 1992 WL 370126 at *1 (citing Lyons, supra at 105-06).

The Louisiana District Court found that "Williams [could] not establish a real and immediate threat that he would again be tested under these circumstances." Jones, 1992 WL 370126 at *1.  Further, the Louisiana District Court refused to distinguish Lyons by relying on the threat posed to the entire union membership.  The Louisiana District Court acknowledged that there are certain circumstances which would allow a labor union to sue absent actual injury to itself under Hunt, supra.  However, the Louisiana District Court stated, "the multiple sequence of events that must occur before there is a real threat that a [union] member may be improperly tested is too attenuated to establish the real and immediate threat necessary to confer standing to seek prospective relief." Jones, 1992 WL 370126 at *2.  Therefore, the Louisiana District Court ruled, neither Williams nor the union had standing to seek injunctive or declaratory relief in this matter.  Id.

The instant matter is extremely similar to Jones.  In the instant matter Mr. Chapman has failed to establish a real and immediate threat that he may be subjected to an allegedly improper search and seizure in the future under these unique circumstances. The United Transportation Union's claims are equally as unlikely.  Therefore, both

6

parties lack standing to seek declaratory or injunctive relief from Officer Perdue and those claims should be dismissed with prejudice. Further, the Union may not assert Mr. Chapman's rights under 42 U.S.C. § 1983. Therefore, the Union has no standing whatsoever in this matter and all of its claims should be dismissed with prejudice.

II.   THE PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANT, GARY L. PERDUE.

In the facts of the Plaintiffs' Complaint, the Plaintiffs alleged:

> The first person to arrive at the scene of the accident was Officer Perdue, a member of the Montgomery Police Department. He obtained some preliminary facts from the Plaintiff Chapman, and approximately one hour later, Officer Perdue came onto the engine and asked the plaintiff if he had been using alcohol or drugs, which he answered in the negative. Officer Perdue then informed Plaintiff Chapman that he would be tested for alcohol and drugs, that Mr. Chapman's luggage would be searched for weapons. Mr. Chapman informed the officer that federal law prohibited testing without probable cause. Officer Perdue responded that he would arrest Mr. Chapman and take him to jail, and then would have him tested.

See Plaintiffs' Complaint at ¶ 12. The only other factual allegation regarding Officer Perdue states, "Mr. Perdue and Police Chief Washington compelled Plaintiff Chapman without his consent to undergo a breath test using a hand held device." Id. at ¶ 13. However, the Plaintiffs next sentence states that the breath test was performed by Deputy Martin. Throughout the remainder of Plaintiffs' Complaint, the Plaintiffs make broad and generic allegations regarding Officer Perdue in conjunction with the other Defendants regarding the perceived violation of his constitutional rights. However, the actions of the other Defendants cannot be placed upon Officer Perdue. The above quoted paragraph implicates no violations of Mr. Chapman's constitutional rights.

In order to survive a Motion to Dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, a plaintiff must allege "enough facts to state a claim to relief

that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above a speculative level on the assumption that the allegations in the complaint are true." Id. at 1965. The Pleading is not sufficient if it "le[aves] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." Id. at 1968

In the instant matter, Mr. Chapman has alleged that Mr. Perdue threatened to arrest him and "compelled" him to undergo a breathalyzer test. The Plaintiffs' only other allegations relating to Officer Perdue involve Mr. Chapman's mere belief that he was under arrest "because of the statements of Officer Perdue" when he was handcuffed and placed in a police car. See Exhibit A at ¶ 14. However, Mr. Chapman's complaint contains no allegations that Mr. Perdue did arrest Mr. Chapman or actually participate in any manner in the breathalyzer testing of Mr. Chapman. Mr. Chapman's claims that Officer Perdue violated his constitutional rights are mere statement[s] that the Plaintiff has a valid claim. However, these bald statements are not supported by operative facts. Mr. Chapman has essentially accused Officer Perdue of speaking to him, and this does not support Mr. Chapman's claims for alleged violations of his constitutional rights.

Further, the Union has alleged absolutely no allegations of harm either it, or its members, have suffered as a result of any of Officer Perdue's alleged actions after this fatal train accident. Therefore, the Union has also failed to state a claim against Officer Perdue.

III.   THE COMPLAINT FAILS TO ALLEGE A CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1983 BECAUSE THERE WAS NO VIOLATION OF THE PLAINTIFFS' CONSTITUTIONAL RIGHTS.

The claims in this matter must fail because the Plaintiffs' Complaint fails to allege a cause of action showing that Officer Perdue, under color of law, deprived Mr. Chapman of any constitutional rights, privileges or immunities guaranteed by the United States Constitution. 42. U.S.C. § 1983.

The Fourth Amendment bars only *unreasonable* searches and seizures. Skinner v. Railway Labor Executives' Association, 489 U.S.602, 109 S. Ct. 1402 (1989). In a Fourth Amendment analysis, a Court must balance the intrusion of an individual's privacy and the government's interest in promoting a legitimate government interest. Samson v. California, 126 S.Ct. 2193 (2006).

The Plaintiffs have alleged that Mr. Chapman's constitutional rights were violated when he was required to undergo a simple breathalyzer test in alleged violation of 49 C.F.R. 219 and without probable cause. Id. at Count I. Yet, the very regulations cited by the Plaintiffs as evidence of Officer Perdue's wrongful conduct *mandate* blood and urine testing in fatal accidents other than in limited circumstances not applicable here. Essentially, the United States Supreme Court has found suspicionless searches of railroad employees reasonable in certain circumstances. Skinner v. Railway Labor Executives' Association, 489 U.S.602, 109 S. Ct. 1402 (1989). In pertinent part, Section 219.201 provides:

> Events for which testing is required:
>
> (a) List of events. **Except as provided in paragraph (b)** of this section, post-accident toxicological tests must be conducted after any event that involves one or more of the circumstances described in paragraphs (a)(1) through (4) of this section:
>
> (1) Major train accident. Any train accident ... that involves...
> (i) A fatality;
> ...

(2) Impact accident. An impact accident...that involves...
(i) A reportable injury;

49 C.R.R. 219.201.  It is clear that a breath test was more than appropriate in the instant matter.  The accident at issue involved a fatality and a reportable injury.

In a challenge to the above quoted regulation, among others relating to the Federal Railroad Safety Act (hereinafter "FRSA"), the United States Supreme Court specifically held that regulations which mandate or allow toxicological tests without a search warrant or reasonable suspicion of impairment, do not violate the United States Constitution. Skinner v. Railway Labor Executives' Association, 489 U.S.602, 109 S. Ct. 1402 (1989). The United States Supreme Court stated in Skinner that "[a]n idle locomotive, sitting in a roundhouse, is harmless.  It becomes lethal when operated negligently by persons who are under the influence of alcohol or dugs." Id. at 1419.  The United States Supreme Court stated further that "employees who are subject to testing under FRA regulations can cause great human loss before any signs of impairment become noticeable to supervisors or others.  An impaired employee, the FRA found, will seldom display any outward 'signs detectable by the lay person or, in many cases, even the physician.'" Id.

Aside from recognizing that moving locomotives are potentially lethal when operated by persons under the influence of alcohol or drugs, the United States Supreme Court stated, "the expectations of privacy of covered employees are diminished by reason of their participation in an industry that is regulated pervasively to ensure safety, a goal dependent, in substantial part, on the health and fitness of covered employees." Id. at 1418. The Supreme Court also stated that

> The Government's interest in regulating the conduct of railroad employees to ensure safety, like its supervision of probationers or regulated industries, or its operation of a government office, school, or prison,

"likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements."

Id. at 1414.   The United States Supreme Court continued stating that "the testing procedures contemplated…pose only limited threats to justifiable expectations of privacy of covered employees."  Id. at 1419.  Finally, the United States Supreme Court stated,

the FRA recognized, alcohol and other drugs are eliminated from the bloodstream at a constant rate…, and blood and breath samples taken to measure whether these substances were in the bloodstream when a triggering event occurred must be obtained as soon as possible.

Id. at 1416.

In Jones, supra, the Louisiana District Court stated, "[n]ot surprisingly, the complaint includes no allegation upon which one could conclude that the officers had probable cause to test Williams.  However, it was a virtual certainty that either Williams or the automobile driver was seriously at fault, and that fault could have been the result of drug impairment."  Id. at *2.  The Louisiana District Court in Jones then embarked on an analysis of what is "reasonable" when requiring a breathalyzer test of a railroad employee when his train collides with a car.  Id.  Implementing the balancing test discussed above, the Louisiana District Court found that the intrusion upon Williams' privacy interest was "minimal."  Id. at *3.  The Louisiana District Court recognized that the United States Supreme Court had "acknowledged that breath tests, unlike blood tests, are not invasive and may be safely conducted outside a hospital environment" and that "these tests do not 'implicate[] significant privacy concerns.'"  Id. (quoting Skinner, supra).  The Louisiana District Court concluded that, given the minimal intrusion, the breathalyzer test of Williams was reasonable because Williams faced vehicular homicide charges and

because alcohol in a person's system dissipates quickly, it was important to act quickly to avoid the "potential loss of evidence." Id.

Officer Perdue denies that he in any way threatened or participated in the breathalyzer testing of Mr. Chapman, however, as this is a motion to dismiss, the facts of the Complaint must be the facts which must be taken into consideration. Under the facts alleged against Officer Perdue, the Plaintiffs claim that Officer Perdue wrongfully threatened Mr. Chapman that he would be required to submit to a breathalyzer test and compelled him to undergo the breathalyzer test. See Plaintiffs' Complaint at ¶ 13. However, the toxicological testing of Mr. Chapman was well within the bounds of the federal regulations governing railroad employees and was certainly reasonable given the fact that there has occurred a fatal train accident. Therefore, the Plaintiffs' claims against Officer Perdue should be dismissed with prejudice because the toxicological testing of Mr. Chapman was reasonable and proper under the circumstances and in no way violated Mr. Chapman's constitutional rights.

IV.    GARY L. PERDUE IS ENTITLED TO QUALIFIED IMMUNITY.

The West Virginia Supreme Court of Appeals has recognized qualified immunity in cases involving police officers and violations of constitutional rights. In Syllabus Point 1 of Goines v. James, 189 W. Va. 634, 433 S.E.2d 572 (1993) the West Virginia Supreme Court of Appeals stated,

"Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."

12

Id. (quoting Bennett v. Coffman, 178 W. Va. 500, 361 S.E.2d 465 (1987)(overruled on other grounds)).  Relying on the United States Supreme Court's decision in Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736 (1982), the West Virginia Supreme Court of Appeals stated, "police officers are only 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Goines, 189 W. Va. at 637 (quoting Harlow, 457 U.S. at 818).

There are essentially two inquiries the Court must make to determine whether a police officer is entitled to qualified immunity established by the United States Supreme Court in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001).  First, the Court must assess if the plaintiff's constitutional rights were violated.  Id. at 200.  If there is no Constitutional violation, the inquiry ends there.  Id.  However, if a Constitutional violation is found, then the second inquiry is whether the Constitutional right which was allegedly violated was clearly established.  Id.  Therefore, in the instant matter, there must be an analysis of whether Officer Perdue violated Plaintiffs' Fourth and Fourteenth Amendments.  See Id.  If this Court determines that he did, this Court must analyze whether those rights were clearly established at the time of the incident.  See Id.

Allegedly "threatening" and then "compelling" Mr. Chapman to undergo a breathalyzer test after a fatal accident is not a violation of the Plaintiffs' Fourth Amendment rights.  Generally, only unreasonable searches and seizures violate of the Fourth Amendment.  Figg v. Schroeder, 312 F.3d 625 (4th Cir. 2002).  To determine whether a search is reasonable, the Court must look at all of the surrounding circumstances.  Id.

As already discussed in the previous section, Officer Perdue did not violate any constitutional rights of the Plaintiffs.  In an unpublished opinion granting summary judgment to the defendants in <u>Brotherhood of Locomotive Engineers & Thomas W. Stewart, et al. v. The Town of Hammonton, et al.</u>, No. 03-4627, 2006 WL 20524 (D.N.J. January 3, 2006), Judge Rodriguez, Judge in the United States District Court for the District of New Jersey[2], stated:

> In general, in order to satisfy the requirements of the Fourth Amendment, a blood test must be reasonable, which requires that the requesting officer have probable cause, and that it be completed in a reasonable manner. <u>Schmerber v. California</u>, 384 U.S. 757, 768 (1966).  However, the Court has held that a train operator can be required to submit to a blood test even absent an individualized suspicion without violating the Fourth Amendment." In <u>Skinner v. Railway Labor Executives' Associations</u>, 489 U.S. 602, 606 (1989), a number of railroad employees challenged on Fourth Amendment Grounds, certain regulations promulgated by the Federal Railroad Administration that "mandate[d] blood and urine tests of employees who are involved in certain train accidents."

<u>Stewart</u>, 2006 WL 20524 at *6.  Attached hereto as Exhibit D.  Judge Rodriguez noted that the United States Supreme Court defined those "certain accidents" as accidents involving a fatality.  <u>Id.</u> at n. 2.  The facts in <u>Stewart</u> are tremendously similar to the facts in the instant matter.

In <u>Stewart</u>, the Plaintiff was operating a passenger train and struck and killed a pedestrian with his train.  <u>Id.</u> at 2.  Mr. Stewart was approached by a defendant police officer and was informed that he would be required to give a blood sample.  <u>Id.</u>  Mr. Stewart refused stating that federal law prohibited the taking of the blood sample absent probable cause.  <u>Id.</u>  The officer telephoned a superior, Sergeant Wythe, to determine

---

[2] The Defendant respectfully requests this Court to note that the Complaint filed in <u>Brotherhood of Locomotive Engineers & Thomas W. Stewart, et al. v. The Town of Hammonton, et al.</u>, No. 03-4627 (D.N.J. 2003) is virtually identical, except for the substitution of the parties and differing facts, and seeks the same relief, as the Complaint filed in the instant matter.  A copy of the 2003 New Jersey Complaint is attached hereto as Exhibit C.

whether it was appropriate to obtain a blood sample from the plaintiff. Id. Sergeant Wythe found that it was, and a blood sample was taken and was negative for any substances. Id. Mr. Stewart raised the exact same allegations against the officer and Sergeant Wythe as have been raised against Officer Perdue and the various parties in the instant matter. See Exhibit C.

In granting summary judgment, on January 3, 2006, in favor of Sergeant Wythe, Judge Rodriguez used the United States Supreme Court's decision in Skinner and first stated that the taking of a blood sample implicated the Fourth Amendment.[3] Stewart, supra at 6 (citing Skinner, supra). He also noted that in a Fourth Amendment analysis, there are certain circumstances which would abrogate the necessity of a warrant. Id. One such circumstance is "when 'special needs, beyond the normal need for law enforcement, make the warrant probable-cause requirement[s] impracticable." Id. (citations omitted)(alteration in original). Judge Rodriguez stated that, pursuant to Skinner, a balancing of the government's interest and privacy interest was necessary, and "that the privacy interests of railroad employees were outweighed by the governmental interest in maintaining the safety of the traveling public." Id.

Judge Rodriguez concluded:

> Finally, the Court held that the individualized suspicion requirement gives way to the important governmental interest because the privacy interests are minimal and the requirement would jeopardize the purpose of the search. [Skinner, 489 U.S. 624]. The Court reasoned that the intrusions on privacy under the regulation were minimal because (1) employees routinely consent to significant restrictions in their freedom of movement; (2) blood tests are not intrusive as long as they are performed in a reasonable manner; and (3) employees who participate in an industry that is regulated pervasively to ensure safety have diminished expectations of privacy." Id. at 625, 627. In contrast, the Court noted that the

---

[3] Upon review of the history of Stewart, Judge Rodriguez entered an Order on January 27, 2006 dismissing the case stating that the case had been settled.

government's interest in testing without individualized suspicion is compelling because (1) employees subject to the regulations can cause great human loss before signs of impairment surface; and (2) blood tests assist the railroads in determining the causes of major accidents, including the elimination of drug impairment as a potential cause or contributing factor by way of negative test results. Id. at 628-30.

In this case, the blood sample that [the officer's superior] communicated was necessary under the circumstances fits within the reasoning of Skinner. Like the blood tests in Skinner, the blood test here followed a fatal accident. In addition, the blood test was conducted at a medical facility by trained medical personnel. Therefore, the Court finds that the blood test did not violate Stewart's Fourth and Fourteenth Amendment Constitutional protections. Accordingly, [the officer's superior] is entitled to qualified immunity.

Stewart, 03-4627 at 7-8.

In the instant matter, the Plaintiffs have alleged that Officer Perdue "compelled" Mr. Chapman to submit to an alcohol breath test in violation of his Fourth and Fourteenth Constitutional protections. However, just as in Stewart, the instant case involved a fatal accident. Also, just as in Stewart, the Plaintiff was operating a train which caused the fatality thereby constituting a "special circumstance" which abrogated the requirement for individualized suspicion to be present.[4]

Similarly, in the unpublished opinion of Brotherhood of Locomotive Engineers v. Rossi, No. CIV A 05-0475 (WJM) 2006 WL 1704472 (D.N.J June 16, 2006)[5], again, the driver of a train struck and killed a police officer who was responding to a nearby fire. Attached hereto as Exhibit E. The two defendant officers requested that the train operator submit to a blood and urine drug test. Id. at *1. The train operator refused,

---

[4] The argument that the circumstances of the conduct of Officer Perdue did not require individualized suspicion is in no way an admission or an implication that individualized suspicion did not exist.

[5] The Defendant respectfully requests this Court to note that the Complaint filed in Brotherhood of Locomotive Engineers & Michael A. Sabia, Jr. v. Rossi, et al., No. 05-0475 (D.N.J. 2005) is virtually identical, except for the substitution of the parties and differing facts, and seeks the same relief as the Complaint filed in the instant matter. A copy of the 2005 New Jersey Complaint is attached hereto as Exhibit F.

therefore, the officers obtained a search warrant to obtain the operator's blood and urine. Id. Suspecting that the unrelated fire was caused by arson, one of the defendant officers, in his affidavit to obtain the search warrant cited "the need to rule out intoxication on the part of [the operator] as an intervening cause in the officer's death in the event the arsonist could be indicted for felony murder." Id. The plaintiff was taken to the hospital where he was tested for drugs. Id. The tests were negative. Id.

The operator and his union filed a complaint against the officers and the town for which they worked asking for the exact same relief for which the Plaintiffs in the instant matter are asking. See Exhibit F. In Rossi, the Plaintiffs did not dispute that this was the type of accident under the regulations which required testing, but took issue with the fact that "officers rather than the railroad representatives made the final determination." Id. The defendant officers in Rossi stated that "they did not seek and obtain toxicological testing pursuant to the regulations" but they did so "in the course of their criminal investigation of arson." Id. The New Jersey District Court stated, "because the FRA regulations specify that the regulations do not 'preempt provisions of state criminal law," 49 C.F.R. § 219.13, the Court finds no violation of the FRSA based on Defendants' actions." Id. The New Jersey District Court concluded, "Plaintiffs cannot show any constitutional violation." Id. at *2. Therefore, the New Jersey District Court granted summary judgment to the Town and dismissed the complaint against the officers. Id.

Again, Officer Perdue denies that he was in any manner involved with the toxicological testing of Mr. Chapman. However, any testing of Mr. Chapman by Officer Perdue would have been done in pursuance of a criminal investigation regarding whether Mr. Chapman was illegally operating a train in an intoxicated state and whether Mr.

Chapman was responsible for the death of an individual. Officer Perdue would have had sufficient probable cause to believe that the toxicological testing of Mr. Chapman could aid in a potential indictment for operating the train at issue in an intoxicated state or for the death of the deceased individual. Officer Perdue in no way violated the FRSA or the constitutional rights of Mr. Chapman and, therefore not only can Mr. Chapman not sustain a cause of action pursuant to 42 U.S.C. § 1982, but Officer Perdue is entitled to qualified immunity.

Assuming, aguendo, that Officer Perdue did violate Mr. Chapman's constitutional rights, those rights were not clearly established. If the constitutional right is not clearly established, the defendant is entitled to qualified immunity. Saucier, 533 U.S. at 201. The "clearly established" inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. See also, Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692 (1999) (the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established). The Fourth Circuit Court of Appeals stated, "[i]n determining whether a right was clearly established at the time of the claimed violation, courts in this circuit ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose." Wilson v. Kittoe, 337 F.3d 392, 402-03 (4th Cir. 2003) (citations and internal quotations omitted).

The United States Supreme Court stated, "[t]he reasonableness of state officials' actions should be judged from an on-scene perspective, and if the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier, 533 U.S. at 202 (citations omitted). If there

are no cases of controlling authority in the jurisdiction in question, and if other appellate federal courts have split on the question of whether an asserted right exits, the right cannot be clearly established for qualified immunity purpose. Wilson v. Layne, 526 U.S. at 618 (noting a circuit split and stating that if judges disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy).

Edens v. Kennedy, 112 Fed.Appx. 870 (4th Cir. 2004) dealt with a police officers alleged violation of an individual's Fourth Amendment rights.  In Edens, Officer Kennedy allegedly entered upon the property of Mr. Edens on two occasions.  Though the entire case was disposed of on the summary judgment motion of Officer Kennedy, the Fourth Circuit Court of Appeals found that Officer Kennedy was entitled to qualified immunity with respect to the first entry.

In Edens, Officer Kennedy received an anonymous tip that Mr. Edens was growing marijuana at his home. Id. at 872.  Mr. Edens had a fence around three sides of the property where his home sat, a locked gate across his driveway with a sign that read "no trespassing" and other "no trespassing" signs on his property. Id.  The fourth side of Mr. Edens' property was lined with a thick wooded area. Id.  There was a gap between the fence and the wooded area which is where Officer Kennedy entered the property. Id.  This gap was usually covered with a piece of plywood, but Officer Kennedy does not recall seeing the plywood on the date he entered Mr. Edens' property. Id.  Officer Kennedy entered the property and found a pot of marijuana on the front porch of the property. Id.

The Fourth Circuit Court of Appeals held that Officer Kennedy's entry onto Mr. Edens' land may have violated Mr. Edens' Fourth Amendment rights, but that Officer Kennedy was entitled to qualified immunity. Officer Kennedy was entitled to qualified immunity because the law on the issue of entry into a fenced area had not been established in the relevant jurisdictions. See Edens, *supra*.

To date, neither the Fourth Circuit, the West Virginia Supreme Court of Appeals nor the United States Supreme Court has clearly expressed any guidelines for law enforcement personnel to follow when investigating crimes, including drug testing of railroad employees, after fatal train accidents. However as have been analyzed throughout this motion, other jurisdiction have found that toxicological testing of railroad employees absent probable cause is reasonable under all circumstances that have been presented, including the circumstances similar to the instant case. See Skinner, *supra*, Rossi, *supra*, Jones, *supra*, Stewart, *supra*.

Further, the very regulations relied upon by the Plaintiffs to establish improper conduct on the part of Officer Perdue still contain a large amount of confusion surrounding them. However, it does not appear that any Court has clearly prohibited a police officer from administering drug tests to railroad employees in the course of their carrying out their duties in accident and criminal investigations. Therefore, under no circumstances is the law in this area "clearly established" to remove Officer Perdue from the protections of qualified immunity.

V.   OFFICER PERDUE'S ACTIONS DID NOT VIOLATE THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

When a government agent's conduct is shocking to the conscience or so "brutal and offensive" that it "does not comport with traditional ideas of fair play and decency,"

the Supreme Court considers that conduct violative of due process. Briethaupt v. Abram, 352 U.S. 432, 77 S. Ct. 408 (1957) (absence of conscious consent to determine whether driver was under the influence of alcohol did not render the taking to be a violation; evidence could have been exculpatory). The United States Supreme Court stated further in Briethaupt, that "due process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of decency and fairness that has been woven by common experience into the fabric of acceptable conduct." Id. at 436.

The Plaintiffs have alleged that Officer Perdue's actions violated both his Fourth and Fourteenth Amendment rights. As has been discussed in the previous section, Officer Perdue's alleged "compelling" Mr. Chapman to undergo a breathalyzer test is not a violation of Mr. Chapman's Fourth Amendment rights. Neither is it a violation of his Fourteenth Amendment rights. A breathalyzer test is extremely non-intrusive and is an acceptable method of determining whether a person is intoxicated. None of the conduct by Officer Perdue, as alleged by the Plaintiffs, is remotely close to shocking the conscience or brutal or offensive.

As has been extensively discussed in the previous sections, Officer Perdue's alleged actions were reasonable under the circumstances and in no way violative of any of Mr. Chapman's constitutional rights. Therefore, the Plaintiffs' Complaint as it relates to Officer Perdue should be dismissed with prejudice.

VI.    OFFICER  PERDUE'S  ACTIONS  DID  NOT  VIOLATE  THE SUPREMACY CLAUSE BECAUSE THE FEDERAL RAILROAD SAFETY ACT, 49 U.S.C. § 20101, ET SEQ., DID NOT APPLY TO HIM.

The United States Supreme Court stated in Gonzales v. Raich, 125 S. Ct. 2195 (2005) that "[t]he Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." It is undisputed that the Federal Railroad Safety Act [FRSA] provides for a regulatory scheme for railroad employers to drug test its railroad employees. However, FRSA may be ignored for law enforcement purposes. See 49 U.S.C. § 20140. See e.g., Jones, supra, 1992 WL at *2. 49 C.F.R. § 199.9(b) states, "[t]his part shall not be construed to preempt provisions of State criminal law that impose sanctions for reckless conduct leading to actual loss of life, injury, or damage to property, whether the provisions apply specifically to transportation employees or employers or to the general public."

Further, Judge Rodriguez in Stewart, supra stated that although FRSA may preempt state law, "State criminal law that imposes sanctions for reckless conduct that leads to actual loss of life is not preempted." Id. (quoting 49 C.F.R. § 219.13). The Court stated that there was no indication that the actions of the police "compromised the integrity of the FRSA," and, therefore, the supremacy clause was without merit. Id. Also, in Rossi, the New Jersey District Court stated that FRSA does not preempt state criminal law.

It is expressly illegal in West Virginia for a person to operate a train while intoxicated. West Virginia Code § 61-3-42 states:

> If any person, while in charge of a locomotive engine, whether the same be driven by steam, electricity or other motive power, running upon the railroad or traction lines of any corporation, or while acting as conductor or brakeman of any car or train of cars on such railroad or traction line, be intoxicated, he shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not exceeding five hundred dollars and imprisoned in the county jail not less than two nor more than twelve months; and for the second offense he shall be guilty of a felony, and,

22

upon conviction, shall be confined in the penitentiary not less than one nor
more than three years.

This statute undoubtedly applied to Mr. Chapman and Officer Perdue's investigation of
whether Mr. Chapman violated this statute is expressly excepted in the FRSA. A simple
breathalyzer test is a reasonable and proper method by which to determine whether the
operator of any type of vehicle, including a train, is intoxicated. The FRSA expressly
does not preempt state criminal law. Therefore, Mr. Chapman's contention that Officer
Perdue was in violation of FRSA and therefore, the Supremacy Clause of the United
States Constitution is without merit. The Plaintiffs' Complaint as it relates to Officer
Perdue should be dismissed with prejudice.

VII.    THE FRSA DOES NOT CREATE A PRIVATE CAUSE OF ACTION.

In Abate v. Southern Pacific Transp. Co., 928 F.2d 167 (5th Cir. 1991), the Fifth
Circuit Court of Appeals affirmed the District Court's ruling that, "that the FRSA did not
afford appellants a private right of action to enforce regulations promulgated under the
statute and declined to issue a preliminary injunction." In Abate, the plaintiffs, railroad
employees and their union, injunction and monetary relief due to Southern Pacific
Transportation Company's carrying out random drug tests pursuant to the regulations
administered by the Federal Railroad Administration. Id. at 168. The plaintiffs alleged
that the random drug testing "subjected them to unjustified humiliation and
embarrassment and violated their legitimate expectations of privacy." Id.

Using the analysis given in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080 (1975), the
Fifth Circuit Court of Appeals stated that the intent of Congress was the most important
factor to be analyzed and stated, "'unless this congressional intent can be inferred from
the language of the statute, the statutory structure, or some other source, the essential

predicate implication of a private remedy simply does not exist.'" <u>Abate</u>, 928 F.2d at 169 (quoting <u>Thompson v. Thompson</u>, 484 U.S. 174, 108 S.Ct. 513 (1988)(citations omitted)).  Further, as noted by the Fifth Circuit Court of Appeals, the regulations at issue in the instant matter, 49 C.F.R. 219, *et seq.* specifically denies that a private cause of action may be had for violations of 49 C.F.R. 219, *et seq.* stating, "[n]othing in this part…[c]reates a private right of action on the part of any person for enforcement of the provisions of this part or for damages resulting from noncompliance with this part." 49 C.F.R. 219.17(b).

The Fifth Circuit Court of Appeals further found that a private right of action under 49 C.F.R. 219, *et seq.* is not consistent with the underlying purpose of the scheme. <u>Abate</u>, 928 at 169 (citing <u>Cort</u>, 422 U.S. at 78).  Also, the Fifth Circuit Court of Appeals found that the plaintiffs were not of the class for whose special benefit the regulations were promulgated.  <u>Id.</u>  Having failed to meet the factors given in <u>Cort</u>, and 49 C.F.R. 219, *et seq.* explicitly denying a private right of action under this regulation, the Plaintiffs' claims alleging Officer Perdue's violations of 49 C.F.R. 219, *et seq.* should be dismissed with prejudice.[6]

Though the <u>Cort</u> analysis has been deviated from and arguably overruled, the Fifth Circuit's analysis in <u>Abate</u> is just as pertinent without <u>Cort</u>.  Essentially, the rule on whether a private right of action exists according to the United States Supreme Court is "whether Congress intended to create the private right of action…" <u>See Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 99 S.Ct. 2479 (1979).  This is the factor on which the Fifth Circuit focused most intensely.  As previously discussed, Congress explicitly

---

[6] The Fifth Circuit in <u>Abate</u> found probative, "that railway labor organizations lobbied, *unsuccessfully* to include in the 1988 amendments to the FRSA the very same private right of action that the appellants" sought in that case.  <u>Abate</u>, 928 F.3d at 170 (emphasis original).

declined to allow for a private right of action for violations of the federal regulations. See 49 C.F.R. § 219.17.  Therefore, even absent a Cort analysis, the FRSA does not creat a private right of action for violations of it.

## CONCLUSION

It is apparent that the railroad unions have attempted similar causes of action on at least two, and possibly three other occasions.  In the Complaints attached as exhibits, the plaintiffs alleged in some manner that they informed the officers whom they ultimately accused of violating their constitutional rights and the FRSA that drug testing a railroad worker was prohibited by federal law absent probable cause.  See Exhibit A at ¶ 12, Exhibit B at ¶ 12 & Exhibit C at ¶ 11.  Further, in each of the three complaints, the plaintiff railroad employee claimed that the incidents caused them "severe emotional distress" and has caused them "difficulty [in] performing [their] duties" for their various employers.  See Exhibit A at ¶ 15, Exhibit B at ¶ 15 & Exhibit C at ¶ 12.  Finally, the three complaints seek the same relief.  However, in each of the occasions known to this Defendant, the Federal Courts have declined to award the requested relief.

For whatever reason, the railroad unions have attempted this same spurious legal argument in various jurisdictions at various times.  Those Federal Courts have rejected their arguments, and so should this Court.  First, neither Mr. Chapman nor the United Transportation Union have standing to seek declaratory or injunctive relief in this matter. The United Transportation Union has no standing to recover based on the alleged violations of the constitutional rights of the Mr. Chapman.  Officer Perdue did not violate the constitutional rights of Rick Chapman or the United Transportation Union.  Again, though Officer Perdue denies having any part in the breathalyzer testing of the Plaintiff or

25

the Fourth Amendment.  Further, any interaction Officer Perdue had with the Plaintiff,

Mr. Chapman, was in furtherance of his duties as a police officer in the investigation of

the accident and of this State's criminal laws.  Under no stretch of the FRSA can it be

interpreted using the Supremacy Clause to deprive police officers from fulfilling their

duties in investigating and scrutinizing the scenes of fatal accidents.  Finally, the FRSA

specifically and expressly does not create a private cause of action for alleged violations

of it.

All of Officer Perdue's actions were reasonable and appropriate given the exigent

circumstances, and the Plaintiffs' claims against Officer Perdue should be dismissed with

prejudice.

/s/ Anna B. Williams
John R. Fowler, Esquire (WVSB 1255)
Anna B. Williams, Esquire (WVSB 10041)

**JOHN R. FOWLER, PLLC**
Suite 1190 United Center
500 Virginia Street East
Charleston, WV 25301
Telephone: (304) 343-7721
Facsimile: (304) 343-7233
*Counsel for Officer Gary L. Perdue*