**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

UNITED TRANSPORTATION UNION, et al.,

          Plaintiffs,

v.                                     CIVIL ACTION NO.  5:07-cv-00682

GARY L. PERDUE, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Locomotive engineer Rick L. Chapman and his union, United Transportation Union (UTU) (collectively, Plaintiffs), bring this action against several law enforcement officials and government entities: Gary L. Perdue, Patrolman for Montgomery, West Virginia; B.R. Martin, Deputy Sheriff for Kanawha County, West Virginia; Lawrence Washington, Chief of Police for Montgomery, West Virginia; City of Montgomery, West Virginia; Kanawha County Sheriff's Department; and County Commission of Kanawha County (collectively, Defendants).  Plaintiffs allege that Defendants violated the constitutional rights of Chapman during the investigation of a fatal accident involving Chapman's locomotive on June 11, 2007 in Montgomery, West Virginia.  Before the Court are the following motions:  (1) Defendant Gary Perdue's Motion to Exceed Page Limit [Docket 15] and (2) Motion to Dismiss [Docket 16]; (3) Plaintiffs' Motion to Exceed Page Limit [Docket 20] and (4) Motion to File a Surreply [Docket 27]; and (5) Defendants B. R. Martin, Kanawha County Sheriff's Department, and County Commission of Kanawha County's Motion to Join in Defendant Gary Perdue's Motion to Dismiss [Docket 23].

With regard to Defendant Gary Perdue's Motion to Exceed Page Limit [Docket 15], and Plaintiffs' Motion to Exceed Page Limit [Docket 20], Local R. Civ. P. 7.1(a) provides that "[a] judicial officer for good cause shown may allow a supporting memorandum to exceed 20 pages." As good cause has been shown for the motions and because there were no objections to the motions, they are **GRANTED**.

With regard to Plaintiffs' Motion to File a Surreply [Docket 27], Local R. Civ. P. 7.1(c) provides that "[s]urreply memoranda shall not be filed except by leave of court." For good cause shown and because Defendants did not object, the motion, is **GRANTED**.

With regard to Defendants B. R. Martin, Kanawha County Sheriff's Department, and County Commission of Kanawha County's Motion to Join in Defendant Gary Perdue's Motion to Dismiss [Docket 23], the Court **GRANTS** the motion to join, because it is unopposed. The Court also notes that Defendants Lawrence Washington and the City of Montgomery move to join in Gary Perdue's Motion to Dismiss [Dockets 25 & 26], and the Court will also **GRANT** these motions. Because all of the defendants join in Gary Perdue's Motion to Dismiss, the Court will refer to that motion as Defendants' Motion to Dismiss.

The briefing is complete and the matter is now ripe for the Court's consideration.

*I. FACTUAL ALLEGATIONS*

The core factual allegations in Plaintiffs' Complaint are as follows:

3. The Plaintiff United Transportation Union ("UTU") is the duly and exclusively designated representative for collective bargaining of the craft of railroad wokers known as locomotive engineers, conductors, hostlers and hostlers helpers, yardmasters, and yardmen.

4. The Plaintiff, Rick L. Chapman, is a resident of the State of West Virginia, employed by the CSX Transportation Company (hereinafter "CSX") as a locomotive engineer, and is a member of the UTU.

. . . .

11. On or about June 11, 2007, at approximately 5:00 p.m., the Plaintiff Rick L. Chapman was operating a CSX freight train, proceeding eastbound in the vicinity of Montgomery, West Virginia at milepost CA 428.0. The train was traveling approximately 33 miles per hour, in accordance with applicable track speed, when all of a sudden and without warning, the Plaintiff Chapman observed someone on the track. Plaintiff immediately sounded the train's horn and applied the train's emergency brakes. The pedestrian was struck before the train could come to a stop, and the pedestrian died.

12. The first person to arrive at the scene of the accident was Officer Perdue, a member of the Montgomery Police Department. He obtained some preliminary facts from the Plaintiff Chapman, and approximately one hour later, Officer Perdue came onto the engine and asked the plaintiff if he had been using drugs, which he answered in the negative. Officer Perdue then informed Plaintiff Chapman that he would be tested for alcohol and drugs, and that Mr. Chapman's luggage would be searched for weapons. Mr. Chapman informed the officer that federal law prohibited such testing without probable cause. Officer Perdue responded that he would arrest Mr. Chapman and take him to jail, and then would have him tested.

13. Subsequently, two Kanawha County Deputy Sheriffs and another Montgomery police officer arrived at the scene along with the Assistant Chief of Police and the Defendant Chief of Montgomery Police Department Lawrence Washington at the scene and began interrogating the Plaintiff. There was a long discussion among all of the law enforcement officers at the scene and Defendant Washington made a call to a person unknown to Mr. Chapman, and was overheard saying "so you're telling me to stand down." The various officers continued to ask whether Plaintiff Chapman had used alcohol or drugs, and whether he had any needles or syringes, which he continued to deny. Nevertheless, the officers proceeded with a pat down search and Mr. Perdue and Police Chief Washington compelled Plaintiff without his consent to undergo a breath test using a hand held device. The test was performed by Deputy Martin. The results of the test were negative.

14. Subsequently, officials from CSX arrived at the scene, and after some discussions, the CSX trainmaster advised Mr. Chapman that the police should be allowed to search his handbag. Upon the search, a handgun owned and properly licensed by Mr. Chapman was revealed. Mr. Chapman told the police that he had a valid permit to carry the gun. However, Mr. Chapman was advised to place his hands behind his back and was handcuffed by Deputy Martin and taken to a police car where he was further questioned about the gun and whether Mr. Chapman had any prior convictions. The police officer called on his radio to check the validity of the gun permit and prior convictions. After confirming the accuracy of Mr. Chapman's statements, the deputy asked Mr. Chapman if he knew he was not under

arrest and that he was only detained.  Mr. Chapman responded that he thought that he was under arrest because of the statements of Officer Perdue and also of being handcuffed.  Mr. Chapman was released from the handcuffs and was told that a taxi would be available to take him to his home terminal.  Mr. Chapman departed the scene in a taxi at approximately 8 p.m.

(Compl. ¶¶ 3–4, 11–14.)

Based on the above factual allegations, Plaintiffs allege the following causes of action against Defendants:  (1) Count I - violation of the Fourth and Fourteenth Amendments of the United States Constitution; (2) Count II - violation of the Supremacy Clause of the United States Constitution; (3) Count III - wrongful arrest.  Plaintiffs also requests that the Court enter various declaratory judgments against Defendants pursuant to 28 U.S.C. § 2201.

Defendants move to dismiss Counts I and II of Plaintiffs' Complaint[1] and advance six arguments in support of their argument:  (1) UTU lacks standing to bring an action against Defendants; (2) the Complaint fails to state sufficient facts to support a claim against Gary Perdue; (3) the Complaint fails to allege sufficient facts to state a claim for violation of the Fourth or Fourteenth Amendments; (4) Defendants are entitled to qualified immunity; (5) Plaintiffs' supremacy clause claim against Defendants is legally untenable; and (6) Plaintiffs cannot state a claim for a violation of the Federal Railroad Safety Act because that act does not create a private cause of action.  The Court will consider these arguments below.

## II.  RULE 12 (b)(6) STANDARD

Pursuant to Fed. R. Civ. P. 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  The rule requires the plaintiff to allege sufficient facts, which, if proven, would entitle

---

[1] Defendants do not appear to move to dismiss Count III and the Court will not address that count.

him to relief under a cognizable legal claim. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint; the factual allegations must be taken as true and construed in the light most favorable to the non-moving party. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). Consequently, a motion to dismiss should be granted only if the plaintiff fails to allege enough facts to state a cognizable legal claim that is plausible on its face. *Twombly*, 127 S. Ct. at 1974. "Factual allegations must be enough to raise a right to relief above the speculative level," and if a plaintiff does not "nudge" his claim "across the line from conceivable to plausible," then the complaint should be dismissed. *Id.* at 1965, 1974. "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001).

### III. DISCUSSION

*A. Fourth and Fourteenth Amendment Claims*

    *(1) Applicable Law*

42 U.S.C. § 1983 provides that

> every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In order to prevail on a § 1983 claim and overcome a government defendant's qualified immunity, a plaintiff must show that the defendant deprived him of a statutory or constitutional right that was "clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609 (1999) (internal quotation marks omitted).

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment does not proscribe all searches and seizures; it proscribes unreasonable ones. *United States v. Sharpe*, 470 U.S. 675, 682 (1985). It is settled law that having a warrant provides the most protection to a defendant, but where it is unreasonable to get a warrant, the Supreme Court has insisted upon "probable cause as a minimum requirement for a reasonable search permitted by the Constitution." *Chambers v. Marroney*, 399 U.S. 42, 51 (1970). Subjecting a person to a breath analysis screening for alcohol (commonly referred to as a breathalyzer) is a search within the meaning of the Fourth Amendment and requires probable cause. The Supreme Court made this point clear in *Skinner v. Ry. Labor Exec. Ass'n*:

> We have long recognized that "compelled intrusio[n] into the body for blood to be analyzed for alcohol content" must be deemed a Fourth Amendment search. In light of our society's concern for the security of one's person, it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable. The ensuing chemical analysis of the sample to obtain physiological data is a further invasion of the tested employee's privacy interests. Much the same is true of the breath-testing procedures . . . . Subjecting a person to a breathalyzer test, which generally requires the production of alveolar or "deep lung" breath for chemical analysis, implicates similar concerns about bodily integrity and, like the blood-alcohol test . . ., should also be deemed a search.

489 U.S. 602, 616–17 (1989); *see also Shoemaker v. Handle*, 619 F.Supp. 1089, 1098 (D. N.J. 1985) ("[T]he detaining and testing of an individual for the use of alcohol by means of a 'Breathalyzer' test and use of controlled dangerous substances by means of a 'urinalysis' are searches within the meaning of the Fourth Amendment."). Additionally, many states have laws that require motorists to submit to a breathalyzer if pulled over and showing signs of intoxication. For example, in Massachusetts, "[w]here . . . there is probable cause to believe that a defendant has been operating

a motor vehicle while impaired, the defendant has no constitutional right to refuse a blood test or Breathalyzer test." *Comm. v. Carson*, 892 N.E.2d 347, 370 (Mass. App. Ct. 2008).[2] Thus, the government may not conduct a breathalyzer test without probable cause because, constitutionally, it is a search.

Federal law is clear that engineers are prohibited from operating trains under the influence of alcohol. *See* 49 C.F.R. § 219.101(a) (prohibiting railroad employees from reporting for, or remaining on, duty while under the influence of alcohol). With regard to probable cause, the Supreme Court of Appeals of West Virginia has noted that physical signs indicative of intoxication include "glassy and bloodshot eyes, slurred speech, and unsteadiness while standing and walking." *Coffman v. W. Va. Div. of Motor Vehicles*, 551 S.E.2d 658, 660 (W. Va. 2001).

The Due Process Clause of the Fourteenth Amendment provides that states may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. "[A] *negligent* act of an official causing unintended loss of or injury to life, liberty, or property," however, does not implicate the due process clause. *Daniels v. Williams,* 474 U.S. 327, 328 (1986) (emphasis in original). Rather, "the term 'deprive,' as employed in the Fourteenth Amendment, suggests more than a mere failure to take reasonable care: it connotes an intentional or deliberate denial of life, liberty, or property.*" Pink v. Lester,* 52 F.3d 73, 75 (4th Cir. 1995).

---

[2] In the motor vehicle context, West Virginia law enforcement officers are required to administer breath analyses "as soon as possible after the law-enforcement officer has a reasonable belief that the person has been driving while under the influence of alcohol, controlled substances or drugs." W. Va. Code § 17C-5-5.

*(2) Analysis*

In their complaint, Plaintiffs allege that Defendants knowingly subjected Chapman to a breathalyzer test without any probable cause to believe that Chapman was under the influence of alcohol or had otherwise violated the law.  In their motion to dismiss, however, Defendants do not argue that Plaintiffs have failed to state a claim under § 1983.  Rather, Defendants argue that, under 49 C.F.R. § 219.201 and *Skinner*, probable cause was not required before the administration of the breathalyzer and, therefore, Plaintiffs' § 1983 claim is without merit.  Defendants' arguments are misplaced.

In *Skinner*, the Supreme Court considered the constitutionality of drug and alcohol testing by railroads of their employees after accidents, as mandated by Federal Railroad Administration (FRA) regulations set forth at 49 C.F.R. pt. 219.  The FRA regulations "do not require, but do authorize,  railroads to administer breath and urine tests to employees who violate certain safety rules." *Skinner,* 489 U.S. at 606.  The Court determined that "in limited circumstances where the privacy interests implicated by such a search were minimal and important government interests furthered by the intrusion would be placed in jeopardy by requiring individualized suspicion, a search could be reasonable despite the absence of individualized suspicion." *Id.* at 624.  The Court noted that the government's interest in public and employee safety could justify departures from the usual warrant and probable cause requirements for a search.  *Id*. at 617.

While the Supreme Court has yet to address the specific issue presented in this action, the probable cause requirement for searches is so fundamental that this Court will not lightly recognize exceptions. Exceptions too often lead to erosion of important rules.  The Court is mindful of Justice

Marshall's dissent in *Skinner*, where he deplored "reading the probable-cause requirement out of the Fourth Amendment." *Skinner*, 489 U.S. at 636.

Furthermore, the facts presented in the instant complaint describe a situation that falls outside the purview of *Skinner*. In *Skinner,* the railroad was searching its own employee to determine the cause of an accident; here, local law enforcement performed the search. While *Skinner* stands for the proposition that administrative searches in the wake of railroad accidents may be performed without probable cause, there is little to suggest that *Skinner* extended to local law enforcement. The Court in *Skinner* stated, "The FRA has prescribed toxicological tests, not to assist in the prosecution of employees, but rather to prevent accidents." *Skinner,* 489 U.S. at 15. Therefore, this Court finds that *Skinner* does not apply to local law enforcement.

Nothing in the instant complaint suggests that the police had anything approaching probable cause. In the absence of probable cause, and assuming that the facts alleged in the complaint are true, the application of the breathalyzer to Chapman is a sufficient factual allegation to support a § 1983 claim.

Defendants cite three cases from other jurisdictions in support of their motion to dismiss Plaintiffs' § 1983 claims based on *Skinner*: *Bhd. of Locomotive Eng'rs v. Rossi*, 2006 WL 1704472 (D.N.J. June 16, 2006); *Bhd. of Locomotive Eng'rs v. Town of Hammonton*, 2006 WL 20524 (D.N.J. Jan. 3, 2006); and *Bhd. of Locomotive Eng'rs v. Jones*, 1992 WL 371026 (E.D. La. Dec. 1, 1992). *Rossi, Hammonton,* and *Jones* held that local law enforcement officers have the right, under *Skinner*, to perform breathalyzer tests without probable cause on railroad employees in the wake of an accident. However, these cases are neither persuasive nor controlling, and for the reasons stated more fully above, this Court rejects their holdings.

Accordingly, the Court **FINDS** that the factual allegations in the Complaint are sufficient to state claims, pursuant to § 1983, that Chapman's Fourth and Fourteenth Amendment rights were violated and Defendants' Motion to Dismiss as to this claim is **DENIED**.[3]

With regard to Gary Perdue's argument that there are insufficient facts alleged against him personally to maintain an action against him, it is true that it is not alleged that he personally performed the breathalyzer, but it is apparent that he was complicit in the actions giving rise to Chapman's claims. In light of the imposing hurdle a defendant must overcome to prevail on a motion to dismiss, Officer Perdue's actions, as described in the complaint, were sufficiently substantial that Plaintiffs have alleged a cognizable claim against him.

Accordingly, the Motion to Dismiss as to Officer Perdue is likewise **DENIED**.

B. Qualified Immunity

   (1) Applicable Law

Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). It protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). Thus, although the exact conduct at issue need not have been held to be unlawful in order for the law

---

[3] Plaintiffs' complaint also includes allegations regarding Chapman's brief detention in the squad car, but Defendants do not challenge these arguments in their motion, and they are accordingly not addressed herein.

governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (explaining that "the fact that an exact right allegedly violated has not earlier been specifically recognized by any court does not prevent a determination that it was nevertheless 'clearly established' for qualified immunity purposes" and that "'clearly established' in this context includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked"). The law is clearly established when the law has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state in which the action arose. *See Jean v. Collins,* 155 F.3d 701, 709 (4th Cir. 1998) (en banc), *vacated,* 526 U.S. 1142 (1999), *aff'd on remand*, 221 F.3d 657 (4th Cir. 2000)).

In analyzing the assertion of a qualified immunity defense, the first task of the Court is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct. *See Taylor v. Waters,* 81 F.3d 429, 433 (4th Cir. 1996). The Court then must consider whether, at the time of the claimed violation, that right was clearly established and "'whether a reasonable person in the official's position would have known that his conduct would violate that right.'" *Id.* (*quoting Gordon v. Kidd*, 971 F. 2d. 1087, 1093 (4th Cir. 1992)).

*(2) Analysis*

Plaintiffs allege that the defendant law enforcement officers violated Chapman's Fourth Amendment right to be free from unreasonable searches and seizures. Defendants argue that because the West Virginia Supreme Court and the Fourth Circuit have not addressed the manner by which law enforcement is to investigate crimes that involve railroad employees, this area of law is

sufficiently gray that the law enforcement officers involved in this action, like any reasonable officers, would not have known that their actions were unconstitutional. However, the inverse is true: because no authoritative court has rendered a decision about this limited circumstance, the law enforcement officers should have treated Plaintiff as they would any other citizen.

As was fully discussed above, the Supreme Court has stated that a breathalyzer is a search and that when a search is performed by a law enforcement officer, the officer is constitutionally required to have probable cause to do so.[4] Thus, there is very little gray area on this issue and officials should have known that they needed probable cause to perform any kind of search or seizure of Plaintiff. Accordingly, taking the facts of the complaint as true, the Plaintiff has alleged sufficient facts to survive a Rule 12 (b)(6) motion on the issue of qualified immunity and the motion to dismiss shall be **DENIED** as to this defense.

C. *Union Standing*

Defendants also move to dismiss UTU, arguing that it does not have standing in this case. Article III of the Constitution restricts federal courts' jurisdiction to the resolution of "cases" and "controversies," and the requirements of establishing Article III standing enforce this jurisdictional restriction. *See Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 11 (2004). "The standing requirement is designed to guarantee that the plaintiff has a sufficient personal stake in the outcome

---

[4] Officer Perdue is presumably familiar with W. Va. Code § 175C-5-4(a), which provides that all motorists in the state are deemed to have given consent to breath analyses. Notwithstanding the implied consent provision, the statute still requires "reasonable cause" of intoxication before the officer administers the breathalyzer test. *Id*. § 175C-5-4(b). A train, obviously, is not a motor vehicle and there is no corresponding West Virginia statute stating that locomotive engineers give implied consent to breath analyses. *Cf. id*. § 61-3-42 (criminalizing the operation of a locomotive while intoxicated). Accordingly, there is no reason to believe that West Virginia law would authorize an officer to administer a breath analysis of a locomotive engineer on a lesser justification than reasonable cause—that is*,* no cause.

of a dispute to render judicial resolution of it appropriate." *Emery v. Roanoke City Sch. Bd.,* 432 F.3d 294, 298 (4th Cir. 2005) (internal quotation marks omitted).

In its responsive memorandum, UTU describes itself as an association and it will be treated as such in this opinion. As an association, UTU has standing to bring suit on behalf of its members when:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

It is apparent that the first two prongs of the *Hunt* test are satisfied in this action. A member of UTU, Chapman, has standing to sue in his own right. Further, it is fair to say that the protection of railway employees from civil rights violations while on the job is germane to the purpose of the union. Defendants argue, however, that UTU fails to satisfy the third prong of the *Hunt* test because the claims brought in this action require Chapman's participation.

In subsequent cases, the Supreme Court has clarified *Hunt* and held that only the first prong of the test—that a member has standing to sue—need be met to satisfy the constitutional standing requirements of Article III. *See United Food & Commer. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555 (1996). Article III standing requires, at a minimum, three elements: (1) an injury in fact; (2) a causal connection between the defendant's actions and the injury; and (3) the likelihood that a favorable ruling will redress the plaintiff's injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). These elements are necessarily present if an association's member has standing to sue. The second prong of the *Hunt* test merely compliments the first prong,

because it does little more than assure that the organization's interests are consistent with the injured members. *United Food*, 517 U.S. at 555.

The third prong—that neither the claim nor the relief requires the participation of individual members in the lawsuit—is a judicially created rule, not constitutional in nature or origin, of "administrative convenience and efficiency." *Id*. at 557; *see also A Helping Hand, LLC v. Balt. County*, 515 F.3d 356, 363 (4th Cir. 2008) ("Whether a party has standing to bring a, [sic] claim in federal court involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'"). Its purpose is to winnow out unnecessary parties whose continued presence is immaterial to resolution of the action.

The Fourth Circuit has stated, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). The Fourth Amendment rights allegedly violated by Defendants belong to Chapman and could not be asserted by anyone on Chapman's behalf. Thus it is clear that because UTU cannot unilaterally maintain an action for the violation of the Fourth Amendment rights its members, UTU's continued participation in the action is immaterial to the adjudication of Chapman's claims and part (c) of the *Hunt* test is not satisfied. While UTU is welcome to provide counsel for its member, Chapman, in this case, it is not necessary or appropriate for the UTU to be a party to this litigation in order to address the central issue—whether Plaintiff Chapman's rights were violated—or to accomplish UTU's apparent objectives.

Accordingly, this court **FINDS** that United Transportation Union lacks standing to be a party to this action. Therefore, the Defendants' Motion to Dismiss is **GRANTED** as it relates to the UTU.

### D. *Supremacy Clause Claim*

Defendants also move to dismiss Count II of Plaintiffs' Complaint, which alleges that Defendants administered the breathalyzer to Chapman in violation of the Supremacy Clause of the United States Constitution.[5] The court has painstakingly reviewed this section of the complaint and the briefing on the subject. After this thorough review of all the arguments, the court can find no claim upon which relief may be granted based upon the Supremacy Clause. Accordingly, Count II of Plaintiffs' Complaint is **DISMISSED**.

### E. *Railroad Safety Act Claim*

Defendants also appear to move to dismiss Plaintiffs' complaint to the extent Plaintiffs seek to bring an action pursuant to the FRA regulations. In their response, Plaintiffs admit that this action is brought under 42 U.S.C. § 1983, and not the FRA regulations. Thus, the Court need not address this issue.

### IV. CONCLUSION

For the reasons stated above, the Motion to Dismiss [Docket 16] is **DENIED** as to Counts I and III and **GRANTED** as to Count II. Accordingly, Count II of the Complaint is **DISMISSED**. Defendant Gary Perdue's Motion to Exceed Page Limit [Docket 15] is **GRANTED**. Plaintiffs' Motion to Exceed Page Limit [Docket 20] is **GRANTED.** Plaintiffs' Motion to File a Surreply [Docket 27] is **GRANTED**. Defendants B. R. Martin, Kanawha County Sheriff's Department, and County Commission of Kanawha County's Motion to Join in Defendant Gary Perdue's Motion to Dismiss [Docket 23] is **GRANTED.**

---

[5] In his response, Plaintiff failed to address the arguments made against the Supremacy Clause claim.

15

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:      SEPTEMBER 30, 2008

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE